**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

*March 14, 2022*

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:15-cr-0564-S3** |
| | § | |
| **RAMON DE LA CERDA** | § | |

## PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, United States Attorney for the Southern District of Texas, and Anibal J. Alaniz, Casey N. MacDonald, Assistant United States Attorneys, Brendan Woods, Trial Attorney for the United States Department of Justice, the defendant, Ramon De La Cerda ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.      Defendant agrees to plead guilty to Count 1 of the 3rd Superseding Indictment. Count 1 charges the Defendant with Conspiracy to Participate in Racketeering Activity, in violation of Title 18, United States Code, § 1962(d). The Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.      The **statutory** maximum penalty for each violation of Title 18, United States Code, § 1962(d) is imprisonment of up to life and a fine of not more than $250,000. Additionally, the Defendant may receive a term of supervised release after imprisonment of not more than 5 years. *See* Title 18, United States Code, sections 3559(a)(1) and 3583(b)(2). Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for up to 5 years without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(1) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

### Agreed Sentence

3.      Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States and the Defendant agree that a sentence of **360** months in prison, a 5-year term of supervised release and a $100 special assessment is the appropriate sentence.

### Mandatory Special Assessment

4.      Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United

States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

5.     Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status.   Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant understands that if he/she is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he/she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### The United States' Agreements

6.     The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Count 1 of the 3rd Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the 3rd Superseding Indictment, the 2nd Superseding Indictment and the 1st Superseding Indictment at the time of sentencing;

(b)     Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the United States and the Defendant agree that a sentence of **360** months in prison, a term of supervised release of 5 years and a $100 special assessment is the appropriate sentence in this case.

3

**Agreement Binding - Southern District of Texas Only**

7.     The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office.

**United States' Non-Waiver of Appeal**

8.     The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

9.     Because the United States and the Defendant have agreed to specific sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), if the Court rejects the plea

4

agreement the Court must do on the record or in open court (or, for good cause, in camera): (a) inform the parties that the Court rejects the plea agreement; (b) advise the Defendant personally that the Court is not required to follow the plea agreement and give the Defendant an opportunity to withdraw the plea; and (c) advise the Defendant personally that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the plea agreement contemplated.

## Rights at Trial

10.   Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)      If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.   If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c)      At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he/she could testify on his/her own behalf.

**Factual Basis for Guilty Plea**

11.   Defendant is pleading guilty because he/she is in fact guilty of the charge contained in Count 1 of the 3rd Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

A.

THE RACKETEERING ENTERPRISE

a.   The Tri-City Bombers criminal organization was founded in the South Texas towns of Lopezville and Pharr, Texas in the mid-1980s.

b.   The Tri-City Bombers criminal organization, including its leadership, members and associates constitute an "enterprise" as defined by Title 18, United States Code, § 1961(4) (hereinafter "the Enterprise"), that is, a group of individuals associated-in-fact that were engaged in, and the activities of which affected, interstate and foreign commerce.

c.   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of obtaining the objectives of the Enterprise.

d.   The Enterprise had a hierarchy for making decisions. The leaders of the Enterprise had such titles as President, Vice-President, General, Captain, Lieutenant and Sergeant. These leaders determined whether members violated the rules and the punishment for any violation.

6

e.      The rules of the Enterprise included, among others: membership for life; brotherhood before anything else; never cooperate with law enforcement; obey orders of superiors; pay a monthly fee to the Enterprise; give 10% of any criminal earnings to the Enterprise; and never disrespect the Enterprise family. The consequences for violating the rules included severe beating, known as a "disiplina" (discipline), to being "x-out" (marked for murder).

f.      The Enterprise adopted black and red as its colors. In addition, some members tattooed the following on their bodies: the letters "TCB"; a 1939 Chevy Bomber car; the number "39"; a Cherry bomb; a necklace tattoo made of small bombs; or three high-rise buildings or three-point crown to represent the Tri-City area.

g.      The Enterprise members maintained regular communication with each other through regular meetings and telephone calls. In communications over cellular telephones, the Enterprise members used coded language to discuss any criminal activity.

h.      The power of the Enterprise was used to create fear and intimidation that shielded its members and associates from criminal responsibility, ensured the timely payment of drug debts and prevented the theft of members' drugs and money. Violent retribution was an important activity of the Enterprise. Such violent retribution helped enforce loyalty to the Enterprise that was necessary to the smooth running of its criminal activities.

i.      Although the Enterprise began in the South Texas area, its members, associates and criminal activities are not bound by that geographic area. In fact, Enterprise

members and associates lived across Texas as well as in Georgia, Oklahoma, Missouri, Indiana, South Dakota, Ohio and other States where they continued to engage in criminal activities.

B.

THE PURPOSE OF THE ENTERPRISE

The purposes of the Enterprise included the following:

a.    maintaining a powerful organization that protected its members and associates from rival criminal organizations

b.    to punish those disloyal to the Enterprise or those who lost or stole the Enterprise's controlled substances;

c.    to enrich its members and associates through criminal activities, such as, the illegal distribution of controlled substances and other criminal acts;

d.    to preserve and protect its power, territory and profits through the use of intimidation, violence and threats of violence; and

e.    to keep rival gangs, potential informants, potential cooperating defendants, witnesses, law enforcement and the public-at-large in fear of the Enterprise through violence and threats of violence.

C.

<u>DEFENDANT</u>

The Defendant was a member of the Enterprise who participated in the trafficking of controlled substances and in the commission of violent crimes.

D.

<u>THE RACKETEERING CONSPIRACY</u>

Beginning on or about January 2008 and continuing to the date of the 3rd Superseding Indictment, the Defendant was a member of, employed by, or associated with the Enterprise that was engaged in, and the activities of which affected, interstate and foreign commerce.

a.      The Defendant knowingly and intentionally entered into an agreement with at least one other person to conduct and participate, directly and indirectly, in the affairs of the Enterprise through a pattern of racketeering activity.

b.      The Defendant entered into the agreement knowing that at least one conspirator would commit at least two acts of racketeering activity that consisted of multiple acts indictable under Title 18, United States Code, § 1951 (interference with commerce by robbery), Title 21, United States Code, § 841(a)(1) (possession with intent to distribute controlled substances and distribution of controlled substances), Title 21, United States Code, § 846 (conspiracy to possess with intent to distribute controlled substances, Texas Penal Code §§ 19.02, (murder) and Texas Penal Code § 20.03 (kidnapping).

E.

<u>THE MANNER AND MEANS OF THE ENTERPRISE</u>

Among the manner and means used by which the defendants and co-conspirators to achieve the object of the conspiracy were the following:

a.    members, associates and others engaged in criminal activity that included, murder, attempted murder, robbery and illegal drug trafficking to achieve its goal of making money;

b.    members held regular meetings to discuss and vote on important decisions that include retaliation against rival gangs, whether a member has violated a rule and, if so, the type and form of punishment and how to expand their illegal drug trafficking activities;

c.    members, associates and others purchased, maintained and circulated weapons and firearms for use in criminal activities;

d.    members, associates and others coordinated the receiving, storing, packaging and transportation in vehicles large quantities of cocaine, marijuana, methamphetamine and heroin from the Rio Grande Valley of Texas to various cities across the United States;

e.    members, associates and others coordinated the receiving, storing, packaging and movement of large quantities of cocaine, marijuana, methamphetamine and heroin using the United States mail;

f.    members, associates and others obtained information regarding locations where controlled substances are being stored and coordinated home invasion robberies to steal the controlled substances;

10

g.      members, associates and others coordinated the receiving, packaging, concealment and movement of the drug proceeds in vehicles back to the Rio Grande Valley of Texas;

h.      members, associates and others coordinated the receiving of drug proceeds by depositing the drug proceeds into bank accounts in various cities across the United States;

i.      members, associates and others coordinated the withdrawal of the drug proceeds from bank accounts in the Rio Grande Valley of Texas; and

j.      members, associates and others used and threatened to use violence against potential informants, cooperating defendants and witnesses.

F.

## DEFENDANT'S PARTICIPATION

The Defendant knowingly and intentionally joined in the conspiracy knowing that at least other members of the Enterprise would commit at least two racketeering acts and personally participated in the following racketeering acts:

I.

MURDER

April 25, 2014
Murder of Juan Gonzalez Gomez

On April 25, 2014, Jose Rolando Gonzalez directed Pedro Infante, Salomon Robles and an unindicted conspirator to meet with Juan Gonzalez Gomez at the parking lot of the

Academy Store in McAllen, Texas.

Pedro Infante drove his pickup truck with Salomon Robles and an unindicted conspirator as his passengers to the Academy Store parking lot. Juan Alberto Mendez followed them in his white pickup truck with the Defendant, Jose Rolando Gonzalez and Adrian Garza as passengers.

At the Academy parking lot, Juan Gonzalez Gomez got into Pedro Infante's pickup truck. Juan Gonzalez Gomez had a firearm in his possession. After leaving the Academy parking lot, Pedro Infante signaled to Salomon Robles and the unindicted conspirator to take Juan Gonzalez Gomez's firearm and a struggle ensured inside the pickup truck. Salomon Robles and the unindicted conspirator took Juan Gonzalez Gomez's firearm, assaulted him and attempted to keep him inside the pickup truck. However, Juan Gonzalez Gomez was able to get out of the pickup truck and ran into a residential neighborhood.

After Juan Gonzalez Gomez got way from Pedro Infante, Salomon Robles and the unindicted conspirator, Juan Alberto Mendez began following Juan Gonzalez Gomez in his white pickup truck. Shortly thereafter, Juan Alberto Mendez stopped his white pickup truck and Jose Rolando Gonzalez directed the Defendant and Adrian Garza to get out of the pickup truck and chase down Juan Gonzalez Gomez. The Defendant, in possession of a firearm, and Adrian Garza got off the pickup truck and began chasing Juan Gonzalez Gomez.

After a foot pursuit, the Defendant caught up to Juan Gonzalez Gomez. As Juan Gonzalez Gomez attempted to hide behind a trash bin, the Defendant shot and killed him.

After shooting Juan Gonzalez Gomez, Juan Alberto Mendez and Jose Rolando Gonzalez picked up the Defendant and Adrian Garza in the white pickup truck.

The Defendant caused the death of Juan Gonzalez Gomez by shooting him with a firearm.

The Defendant did so intentionally, that is, it was the Defendant's conscious objective and desire to cause said death.

### Breach of Plea Agreement

12.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.   If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Complete Agreement

13.     This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this

plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

14.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____ MArch 14 _____, 2022.

_____
Defendant

Subscribed and sworn to before me on _____ MArch 14 _____, 2022.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Jennifer B. Lowery
United States Attorney

By: _____
Assistant United States Attorney

_____
Attorney for Defendant

14

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:15-cr-0564-S3** |
| | § | |
| **RAMON DE LA CERDA** | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case.  I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant.  To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     ____3 / 14 / 22_____
Attorney for Defendant                                    Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every

15

part of this plea agreement with my attorney.   I understand this agreement and I voluntarily

agree to its terms.

_____                    14 March 2022
Defendant                                        Date